DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Richard A. Daniels, ) | |
| ) | CASE NO. 1:05 CV 639 |
| Petitioner-Defendant, ) | CASE NO. 1:03 CR 250 |
| ) | |
| v. ) | <u>MEMORANDUM OPINION</u> |
| ) | <u>AND ORDER</u> |
| United States of America, ) | |
| ) | |
| Respondent-Plaintiff. ) | |
| ) | |

The petitioner-defendant, Richard A. Daniels, has filed pursuant to 28 U.S.C. § 2255 a pro se petition for relief from his sentence arguing that he was denied the effective assistance of counsel.

## **I. BACKGROUND**

The petitioner entered into a written guilty plea agreement which called for a total offense level of 24 and a sentencing range of 51 to 63 months. As part of this plea agreement, he agreed not to seek a downward departure.

Following receipt of the presentence report, this Court *sua sponte* indicated that it would consider granting a downward departure based on information that it had gleaned from the presentence report. By Order dated January 27, 2004, the Court stated in part as follows:

> Paragraph 51 of the Presentence Report ("PSR") includes the following passage:
>
> On October 11, 1982, the defendant eloped and married Bernadette Atyim in Hardin County, Iowa. They remained married for approximately 9 years, and their marriage dissolution was granted on December 20, 1991, in the Lake County Common Pleas Court in

(1:05 CV 639)

> Painesville, Ohio (Case 91DI000973). One child was born to this union, and their daughter is Sarah Smyle Daniels, who is 19 years old and suffers Wolf-Hirschhorn syndrome, a congenital chromosomal defect that has caused her to be permanently disabled. She weighs 28 pounds and is 50 inches tall, and she has a severely deformed spine with a protruding tailbone. She also has a seizure disorder, for which she is prescribed medication. She is not verbal, but she communicates with her eyes, facial expressions, and body language. She is dependent on others to feed and clothe her. She wears a diaper and needs a Fleet enema every two or three days. She attends Broadmoor School in Mentor, Ohio during the day. The defendant and Sarah's mother share custody of Sarah, with the defendant having Sarah at his home every other week.
>
> The PSR also includes extracts from two letters submitted to the Probation Department by Nancy Werstak and Sara Crump which support the proposition that the defendant has provided very effective support for his severely handicapped and deformed daughter, now 19.
>
> > "I have known Rick Daniels since 1980. He was married to one of my closest friends. I began working for him in 1989. . . Several years ago, we determined that it might be worthwhile to buy and sell some merchandise on ebay. Things are too hectic during regular business hours to write ads and list them. Rick purchased a computer for my home use and paid for the telephone line for the Internet. . . I know Rick to be a good father. I know his older daughter Melissa and his younger daughter Sarah. He is a kind and compassionate dad to both. Sarah is severely physically and mentally handicapped and Rick has always put her needs at the very top of his priorities." (Nancy Werstak)
>
> > "Rick has two daughters Melissa and Sarah. He has never shown anything contrary to what an incredible father he is. Melissa has received his love and support and financial help on many levels all of her life. Sarah, born with a serious birth defect and given by doctors only weeks to live, has just celebrated her 19th birthday. This, in my opinion, can only be attributed to her parents Rick and Bernadette. Rick, in particular, has spent these last 19 years reading volumes of alternative healing material and in general devoting his life to making her as comfortable and happy as possible. My friends and I have always been truly amazed at his ability to wake up each day and lovingly deal with what most people would consider such a heavy and stressful burden. His approach to this has always been positive and helpful." (Sara Crump)

(Doc. No. 73).

(1:05 CV 639)

At the Court's invitation, the government filed a brief opposing a downward departure. (Doc. No. 75). The government argued that the petitioner was not entitled to a downward departure based on family issues.

The Court then published a Memorandum Opinion and Order on February 9, 2004, indicating that it would not grant a downward departure after all because it then believed it was constrained by recent developments in the law and the Sentencing Guidelines. Specifically, the Court stated:

> On January 27, 2004, this Court entered an order notifying the parties that it would *sua sponte* consider[1] whether it should depart downward when sentencing defendant Daniels based upon the "highly unusual family situation" presented by Daniels' severely disabled and totally dependent nineteen-year-old daughter. The Court invited the government to file a sentencing memorandum with respect to this issue. The government has done so.
>
> > [1] Pursuant to the plea agreement, both the government and Daniels have agreed not to seek any other enhancements, reductions, victim-related or defendant-related adjustments, or upward or downward departures from the Sentencing Guideline Offense Level set forth in the agreement, namely, Offense Level 24 (i.e., Total Offense Level 27 minus 3 for acceptance of responsibility).
>
> The Court has carefully considered what, if any, options it has in this case with respect to the sentencing of defendant Daniels. Unfortunately, the Court now concludes that it is constrained by the express language of 18 U.S.C. § 3553(b)(2) and USSG § 5H1.6, p.s. (second paragraph).
>
> Section 3553(b)(2), added to the statute by Pub.L. 108-21, Title IV, § 401(a), April 30, 2003, 117 Stat. 667, provides, generally, that this Court must impose a sentence within the applicable sentencing guideline range unless it finds
>
> > ...a mitigating circumstance of a kind or to a degree, that –
> >
> > > (I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;

3

(1:05 CV 639)

> (II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and
>
> (III) should result in a sentence different from that described[.]
>
> * * *

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress...

That same Public Law expressly added language to USSG § 5H1.6, a policy statement dealing with the effect of "Family Ties and Responsibilities" on sentencing. The new language is reflected in bold type below:

> Family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted.
>
> **In sentencing a defendant convicted of an offense under section 1201 involving a minor victim, an offense under section 1591, or an offense under chapter 71, 109A, 110, or 117 of title 18, United States Code, family ties and responsibilities and community ties are not relevant in determining whether a sentence should be below the applicable guideline range.**
>
> Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine.

Daniels has pled guilty to an offense under chapter 110 (dealing with Sexual Exploitation of Children), namely § 2252(a)(2). Therefore, in the Court's view, family responsibilities "are not relevant" in determining the sentence. In fact, the language in bold type above has stated affirmatively that such considerations are <u>not</u> permissible grounds for a departure.

. . . Furthermore, it is apparent that the crime Daniels committed was completely inconsistent with the character traits that have motivated him all these many years with respect to his daughter's care.

Unfortunately, the Court believes it is completely constrained by the statute and guidelines and is not free to depart downward even in view of Daniels' family responsibilities.

Accordingly, the Court will not *sua sponte* apply a downward departure.

4

(1:05 CV 639)

(Doc. No. 81, bolding and footnote in original opinion).

The government, in responding to the present petition for habeas relief, concedes that this Court was incorrect in its view that it no longer had the power to depart downward based on family responsibilities. Specifically, the government stated in relevant part as follows:

> Daniels plea agreement specified sentencing pursuant to the 2002 Guidelines... . The Court's decision, *sua sponte*, to consider a downward departure was not contemplated by the plea agreement. It is clear, however, that the government did not breach the plea agreement.
>
> Under the 2002 Guidelines, "family ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guidelines range." United States Sentencing Commission, Guidelines Manual, § 5H1.6, p.s. (Nov. 2002).
>
> [2] In its Sentencing Memorandum, the government based its arguments against a downward departure upon Section 5H1.6 of the Sentencing Guidelines (in effect November 1, 2002), not upon the PROTECT Act. (Sentencing Memorandum at 7)
>
> On April 10, 2003, Congress passed the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003 ("the Act"). The Act directly amended several sentencing guidelines and policy statements in the 2002 Guidelines Manual. For offenses involving children and for sexual crimes the Act: (1) amended the Sentencing Guidelines to, inter alia, restrict downward departures on certain grounds; (2) created new substantive criminal prohibitions and authorized the imposition of new enhanced penalties; and (3) provided for miscellaneous procedural changes. These amendments made by Congress became effective on April 30, 2003, when the President signed the Act into law. See Pub. L. No. 108-21, 117 Stat. 650 (April 30, 2003).
>
> Pursuant to the Act, Section 5H1.6 of the Guidelines was amended to specify that with respect to a defendant convicted of an offense under chapter 71, 109A, 110, or 117 of Title 18, United States Code, family ties and responsibilities and community ties are not "permissible" grounds for departure (Section 401(b)(4) and thus are not relevant in determining whether a sentence should be below the applicable guideline range. Supplement to the 2002 Guidelines Manual. § 5H.16 p.s. Daniels was convicted of an offense under Chapter 110 of Title 18, United States Code, that is, sexual exploitation and other abuse of children.
>
> The Constitution prohibits Congress from enacting any "ex post facto Law." U.S. Const. art. I, § 9, cl. 3. This clause "is aimed at laws that retroactively alter the

5

(1:05 CV 639)

>   definition of crimes or increase the punishment for criminal acts." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 504 (1995) (citing *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)). This clause embraces four categories of penal laws: those that create new criminal prohibitions; those that aggravate existing criminal prohibitions; those that increase the punishment for existing crimes; and those that alter the legal rules of evidence to permit conviction based upon less evidence than previously required. See, e.g., *Miller v. Florida* 482 U.S. 423, 429 (1987)(quoting *Calder v. Bull* 3 Dall. 386, 390 (1798)).
>
>   The Ex Post Facto Clause does not apply to every penal law. Rather, "[t]o fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it' ... by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis* 519 U.S. 433, 441 (1997) (quoting *Weaver v. Graham*, 450 U.S 24, 29 (1981)). A law is "disadvantageous" to the offender if it is "more onerous than the prior law.'" *Miller*, 482 U.S. at 431 (quoting *Dobbert v. Florida*, 432 U.S. 282, 294 (1977)).
>
>   Daniels' offense behavior occurred between on or about November 23, 1999, and on or about April 17, 2003 (Indictment, Count I), prior to the amended guideline provision of § 5H1.6. The government agrees that the new offense-defining and statutory enhancement provisions in the PROTECT Act are applicable only in those cases where the crime was committed or completed after the statute's effective date, April 30, 2003. The same rule also applies to the new guidelines amendments. The amended version U.S.S.G. § 5H1.6 is "disadvantageous," in the ex post facto sense, because it eliminates the sentencing court's discretion in imposing sentence under a guidelines regime in a way that is adverse to the defendant.

(Doc. No. 7, at 9-11, footnote in original; internal headings omitted).

## II.  IS THE PETITIONER ENTITLED TO HABEAS RELIEF UNDER THE CIRCUMSTANCES AS ABOVE OUTLINED?

Section 2255 of Title 28 provides in relevant part:

>   A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . .
>       . . . If the court finds . . . that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

(1:05 CV 639)

In this case, the Court itself raised the possibility of a downward departure, but ultimately decided that it had no authority to do so. It now appears to a certainty that the Court was incorrect in its conclusion that it had no authority to depart downward to accommodate the very difficult family circumstances of the defendant. The Court incorrectly based that determination on law that simply did not apply to the defendant.

There is no doubt that, had the Court believed it had the authority to depart downward at the time, it absolutely would have done so. The Court's mistaken view of the applicability of the new policy statement relating to family responsibilities resulted in a sentence significantly longer than the Court would have otherwise imposed under the circumstances at the time of sentencing.

Because the defendant had agreed not to seek a downward departure, the Court did not give defendant's counsel an opportunity to address the issue which it had raised *sua sponte*. Therefore, the error here -- an error committed by the Court -- cannot be attributed to any ineffectiveness on the part of counsel for the defendant.[1] Even so, case law dealing with ineffective assistance of counsel provides some guidance. In Strickland v. Washington, 466 U.S. 668, 694 (1984), the Court concluded that a defendant must show that, but for counsel's errors, the result of the proceeding would have been different. The focus is on whether the errors likely resulted in a proceeding that was fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

---

[1] Arguably, counsel for the defendant could have insisted that he be allowed to make an objection on the record. He did not do so. Perhaps he would not have done so even if the Court had given him an opportunity.

(1:05 CV 639)

In this Court's view defendant's sentence was fundamentally unfair because, but for the Court's own error, the sentence imposed would have been significantly shorter than the sentence actually imposed.[2] Even though the daughter whose care formed the basis for this Court's desire to depart downward is now deceased, that fact does not change the calculus at <u>this</u> juncture. The Court must look to the exact time period at which the defendant was sentenced and not consider subsequent developments.

At the time the defendant was sentenced, this Court had the authority to depart downward based on family responsibilities. The Court would have done so had it not mistakenly applied a new policy statement in the Guidelines, a policy statement which, as it turns out, should not have been applied. This mistake rendered defendant's sentence fundamentally unfair.

Therefore, defendant is entitled to re-sentencing.

---

[2] In a recent Sixth Circuit opinion, the court examined a sentencing circumstance where the district court, while imposing the lowest possible sentence of imprisonment, had expressed reservations even about that sentence in the face of the defendant's advanced age and poor mental health, but imposed the sentence anyway, believing that the Guidelines were mandatory. The Sixth Circuit noted that "[b]ut for its belief that the Guidelines were mandatory, it is well within the realm of possibility that the district court would have imposed a sentence below the sentencing range called for by the Guidelines[.]" <u>United States v. Hall</u>, 411 F.3d 651, 653 (6th Cir. 2005). The court found plain error under the test articulated in <u>Johnson v. United States</u>, 520 U.S. 461, 466-67 (1997) (a sentence may be vacated if there was an "(1) error, (2) that is plain, and (3) that affects substantial rights.").

8

(1:05 CV 639)

### III.  THE RULING

The Court grants the writ and directs the U.S. Marshal to return the defendant for re-sentencing.  The Court will consider the facts as they existed at the time of the sentencing with respect to a downward departure based on family circumstances.

By this order, the Court also appoints the Federal Defender to represent the petitioner at the re-sentencing hearing and for appellate purposes in the event either the petitioner or the government chooses to appeal.

### IV.  DATE FOR THE RE-SENTENCING

The Court will conduct the re-sentencing hearing on  Tuesday, December 20, 2005 at 12:30 p.m. and directs the United States Marshal to return the petitioner to the district in time for the petitioner to consult with the Federal Defender prior to the sentencing hearing.

The Court directs that a copy of this order be sent to the U.S. Marshal and to the Federal Defender.

IT IS SO ORDERED.

  November 3, 2005                   /s/ David D. Dowd, Jr.
Date                                David D. Dowd, Jr.
                                    U.S. District Judge